IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
AT OMAHA, NEBRASKA

| | | |
|---|---|---|
| KENDALL BRYCE WALSH, | ) | Case No.: _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT AND REQUEST FOR** |
| vs. | ) | **JURY TRIAL** |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, a | ) | |
| Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Plaintiff, Kendall Bryce Walsh, by and through his attorneys, James L. Cox, Jr., of ROSSI, COX & VUCINOVICH, P.C., and John J. Higgins, and by way of claim against Defendant alleges, avers and states:

1.     At all times herein mentioned, Defendant, Union Pacific Railroad Company, a corporation, was and is now a duly-organized and existing corporation doing business in the State of Nebraska, Iowa and other states, with its principal place of business in Omaha, Nebraska.

2.     Defendant was at all times herein mentioned and now is engaged in the business of a common carrier by railroad in interstate commerce in Nebraska, Iowa and other states.

3.     At all times herein mentioned, part of Plaintiff's duties as an employee of Defendant were in the furtherance of and directly or closely or substantially affected said interstate commerce.

4.     The injuries sustained by Plaintiff hereinafter enumerated arose in the course of Plaintiff's employment with Defendant.

5.     Plaintiff brings this action against Defendant under the provisions of 45 U.S.C., §§ 51 to 60, *et. seq.* ("The Federal Employers' Liability Act"), regulations promulgated under the authority of those sections, other federal safety laws, and applicable state safety laws.

6.     Under the terms of the Federal Employers' Liability Act this court has jurisdiction.

7.     On July 15, 2005, Plaintiff was employed by Defendant, Union Pacific Railroad Company, as a welding machine system operator on Regional Gang 8571 near Denison, Iowa. A "system" gang works all over the UPRR system.

8.     On that date, Plaintiff's gang was working "compressed halves," which consist of

eight 10-hour days on, with seven days off.

9.      July 15, 2005 was a very hot day with high humidity.  Plaintiff and his co-workers requested, but were not furnished, an adequate supply of cool, sanitary water for drinking purposes.

10.      At approximately 1:00 p.m., the gang lost its track and time permit on the track. The foreman instructed the gang that he was not going to release them yet, and that they should go and wait near the crossing where they had parked their personal vehicles until he released them.

11.      Plaintiff and his co-workers had completed six welds and done numerous torch cutting also that day.

12.      Plaintiff and his crew members were waiting at a grade crossing at Milepost 289.4 on the Boone subdivision.

13.      Plaintiff was standing near a pile of concrete railroad ties when the ties, without notice and without warning, began to fall, knocking Plaintiff to the ground.  One of the ties landed on and crushed his right forearm.  Plaintiff's co-workers were able to lift the concrete tie from his arm.  A decision was made to load Plaintiff up in the foreman's pickup and transport him to a hospital.  Plaintiff's supervisor began driving in the direction of Carol, Iowa, and then received a call telling him that he should turn around and take Plaintiff to Denison, Iowa.

14.      Plaintiff was examined and treated at Crawford County Memorial Hospital in Denison, Iowa.  Plaintiff's arm was x-rayed, the tears in the skin were sutured, and he was given a tetanus shot.  Plaintiff was given a prescription for Vicodin and released to the care of his supervisor.  Plaintiff was then driven back to the Denison depot to fill out a Personal Injury Report, sign medical releases, and take a drug test.  Plaintiff was then instructed to go back to the scene for a reenactment.

15.      After the reenactment, Plaintiff was driven back to the Denison depot.  His supervisor told Plaintiff that the Union Pacific Railroad had no plans to transport him home, and that he could just go to his motel room and wait until morning, when they might have something else figured out.

16.      Plaintiff, concerned about his arm because of the severe pain in his arm, drove home.

17.      He arrived home at about 9:30 p.m.  His wife immediately took him to the Columbus Community Hospital Emergency Room, where a diagnosis of compartment syndrome was made.  Plaintiff was taken to the operating room for an emergency fasciotomy of the volar compartment of his right forearm.

18.      Subsequently, Plaintiff was referred to Richard P. Murphy, M.D., for evaluation.

2

Dr. Murphy's impression was severe crush injury right forearm, acute volar compartment syndrome as a result of the crush injury to the right forearm, status postop fasciotomy.

19.     On March 14, 2006, Dr. Murphy performed tendon transfer surgery on Plaintiff's right arm in an attempt to improve motion and function.

20.     At the time and place of Plaintiff's injury, Defendant, Union Pacific Railroad, had the duty, among others, to exercise ordinary care to provide its employees with a reasonably safe place to work, in, among other things:

    (a)    the duty to investigate, institute, and implement reasonably safe methods and procedures for the performance of the work;

    (b)    the duty to provide an adequate supply of cool, sanitary water for drinking purposes for its employees, Revised Statutes of Nebraska, § 74-916;

    (c)    the duty to comply with its own rules, including Engineering Track Maintenance Field Manual 6.1.1, Loading and unloading material; Union Pacific Safety Rules 75.2, Material storage; Union Pacific Railroad Maintenance of Way Rules 4.1, Foreman; among others; and

    (d)    the duty to provide Plaintiff reasonable medical care.

21.     Defendant, through its agents, servants and employees other than Plaintiff, negligently failed to perform the above-said duties, as a result of which Plaintiff was caused to suffer the injuries hereinabove enumerated.

22.     Plaintiff's injuries hereinabove enumerated have been painful and disabling, and for an indefinite time in the future will be painful and disabling, and have and will in the future cause Plaintiff mental and physical pain and suffering.

23.     Plaintiff's injuries hereinabove enumerated have impaired Plaintiff's ability to enjoy life and will impair in the future Plaintiff's ability to enjoy life.

24.     By reason of the facts hereinabove stated and the injuries caused Plaintiff, Plaintiff was forced to and did incur indebtedness for the services of duly-licensed physicians and surgeons, and for medicines, x-rays, and hospitalization. Plaintiff is informed and believes and therefore alleges that he will require further medical attention as a result of said injuries.

25.     By reason of the facts hereinabove stated and the injuries caused Plaintiff, Plaintiff will incur a further indebtedness for medical attention.

26.     By reason of the facts hereinbefore stated and the injuries caused Plaintiff thereby, Plaintiff has sustained loss of wages and loss of fringe benefits in the past, and will in the future sustain loss of wages, impairment of earning capacity and loss of fringe benefits, all to his damage.

WHEREFORE, Plaintiff prays judgment against Defendant in an amount sufficient to compensate him for his general damages, together with such special damages as may hereinafter be ascertained, and for his costs of suit incurred herein, expert witness fees, and whatever other relief this honorable Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL TO A JURY OF SIX (6) ON ALL ISSUES RAISED HEREIN.

Signed at Denver, Colorado this 26th day of April, 2006.

James L. Cox, Jr., #20223
Attorney for Plaintiff
Rossi, Cox & Vucinovich, P.C.
3801 E. Florida Ave., Suite 905
Denver, CO  80210-2500
Telephone: (303) 759-3500
Fax: (303) 759-3180
jcox@rcvpc.com

and

John J. Higgins, Esq.
551 Continental Building
209 S. 19th St.
Omaha, NE 68102-1760
Telephone:  (402) 341-9970
Fax:  (402) 341-9972
higginslaw_39@msn.com

Plaintiff's Address:
2859 39th Ave.
Columbus, NE  68601-2262

4